## Case No. 6,834.

### HUDSON v. DRAPER et al.

[4 Fish. Pat. Cas. 256; 4 Cliff. 178.] [1]

Circuit Court, D. Massachusetts. Oct., 1870.

PATENTS — INFRINGEMENT — BURDEN OF PROOF—
ASSESSMENT OF DAMAGES—EXPERT TESTIMONY.

1. Infringement is a material and substantive part of the complainant's case, and the universal rule is that he takes the burden of establishing the affirmative of the issue, whether the suit is at law or in equity.

2. Different rules for the assessment of damages prevail in suits in equity from those which are recognized in actions at law, but in all other respects the rights of the parties depend upon the same considerations.

3. Experts may be introduced to support either side of the issue, and witnesses may be examined as to the practical operation or construction of the two machines, but the question of infringement. after all, must be determined chiefly by a comparison of the mechanism of the complainant, as described in this patent, with the machine made and used or sold by the respondents.

4. Notwithstanding an expert may doubt whether a device can operate in a particular way, the proofs furnished by practical operation and experiment are entitled to greater weight than the opinion of any one.

5. A claim for "said manufacture of printing type. made substantially as described. by the combined process of stamping the letter or figure from a plate or piece of metal, and subsequently reducing the same in the manner and for the purpose set forth," is not a claim for a product, but for a mode of manufacture consisting of the two stages of stamping and reducing. both of which are essential, and must be employed to constitute infringement.

6. Where the defendants used but one of the essential steps in the plaintiff's patent, as a part of their process. and did not use the other, except in exceptional cases, arising from imperfection in their mechanism, held, that they did not infringe.

7. Metallic elements of a machine or device often require some fitting to adapt them to their work: and such remedies as are usually applied to overcome or remedy imperfections in machinery cannot be regarded as an infringement of letters patent.

This was a bill in equity, filed to restrain the defendants [Francis Draper and others] from infringing letters patent [No. 55,299] for "improvement in the construction and manufacture of printing type." granted to complainant [Thomas S. Hudson] June 5, 1866. The invention consisted in striking up letters for printing from sheet metal, and grinding or planing off the surface until the roundness is removed and definite square sides and angles are obtained. The claim was as follows: "The said manufacture of printing type, made substantially as described, viz: by the combined processes of stamping the letter or figure from a plate or piece of metal, and subsequently reducing the same in the manner and for the purposes set forth."

1 [Reported by Samuel S. Fisher. Esq.. and by William Henry Clifford. Esq.. and here compiled and reprinted by permission.]

Walter Curtis and B. R. Curtis, for complainant. James B. Robb, for defendant.

CLIFFORD, Circuit Justice. Inventors, whose improvements are secured by letters patent duly issued, may prosecute infringers of their exclusive rights as well in equity as at law, and all such actions, suits, and controversies are exclusively cognizable in the circuit courts. 5 Stat. 124. Letters patent were granted to the complainant June 5, 1866, for a new and useful improvement in the construction and manufacture of printing type, and he alleges that the respondents have been for a long time and now are manufacturing and selling great numbers of printing types constructed according to the mode set forth in his letters patent, and that the printing types so constructed by them do infringe the exclusive right of making, using and vending such manufactures, as secured to him by his letters patent. Process was issued and served, and the respondents appeared and filed an answer, in which they admit that they have made and sold printing-wheel types, or blocks, for nearly two years prior to the time of filing the original answer, but they deny that the printing-wheel types which they have manufactured were constructed in substantially the same manner as set forth in the letters patent of the complainant. On the contrary, the respondents allege that the printing-wheel types, which they have manufactured and sold, were constructed in the manner and according to the description and directions contained in certain letters patent granted to them May 7. 1867 [No. 64,410], for "a new and useful device" invented by them "for forming letters on type blocks." They explicitly deny that they have infringed the letters patent of the complainant, but they did not in the original answer put in issue the novelty of the complainant's invention. Since that time, to wit: on June 12. 1869, the respondents by consent filed an amended answer, in which they allege that the improvement in the construction and manufacture of printing type described in the patent set forth in the bill of complaint, was described in letters patent granted to the complainant June 20, 1865, as assignee of himself and Anson Hardy, of Brookline, in this district; that the same was therein set forth as a part of the joint invention of the parties; that the manner of constructing or manufacturing printing type, and the mode or manner of making a type chain, set forth in the patent mentioned, in the bill of complaint, was invented by said Hardy; that if the complainant contributed in any degree to the invention, it was jointly with that party and not otherwise.

Much consideration need not be given to the first defense set up in the amended answer, as the patent therein referred to contains no description whatever of any kind

of printing type, or of any process of manufacturing printing type for any purpose. Described in general terms, it is a patent for the combination and arrangement of certain devices therein enumerated, the several parts taken as a whole forming an improved machine for canceling stamps. Reference is made in the description to an endless chain, and it is represented that it contains thirty-one links, with figures projecting from them for printing the various numbers from one to thirty-one, indicative of the days of the month, but it gives no explanation as to the process or processes by which those figures are to be formed, and the respondents have introduced no evidence upon the subject. Extended discussion of the other two propositions presented as defenses in the amended answer is unnecessary, as the evidence introduced in their support fails to satisfy the court that either of them is true. Agawam Co. v. Jordan, 7 Wall. [74 U. S.] 606. Subject to these remarks, the case stands as it stood under the original answer, in which the respondents did not put in issue the novelty of the complainant's invention. Examined in that view, as the case must be, and in view of the fact that the complainant has introduced his letters patent in evidence, it must be assumed as a prima facie presumption that the complainant is the original and first inventor of what is described in his letters patent as his improvement. Issued by public authority, as letters patent are, they are presumed to secure to the patentee the exclusive right which they purport to grant, and where the answer is silent upon the subject, or where the respondent introduces no proof to establish the opposite theory, the complainant may safely repose upon that presumption, without offering any evidence to confirm it. Viewed in that light, as the pleadings in every patent suit must be, it is evident that the only question in the case remaining to be considered, is that of infringement alleged by the complainant and denied by the respondent. Infringement is a material and substantive part of the complainant's case, and the universal rule is that he takes the burden of establishing the affirmative of the issue, whether the suit is at law or in equity. Different rules for the assessment of damages prevail in suits in equity from those which are recognized in actions at law, but in all other respects, the rights of the parties depend upon the same considerations. What the court is called upon to determine in this case is, does the machine or device made and sold by the respondent infringe the invention of the complainant, as described and claimed in his letters patent, and if it does not, then the bill of complaint must be dismissed; but if it does infringe the complainant's patent, then he is entitled to his remedy. Expert testimony may be introduced on the one side and the other to support or disprove the affirmative of

that issue, and witnesses may also be examined as to the practical operation of the two machines, and the mode in which they were respectively constructed, but the question of infringement after all must be determined chiefly by a comparison of the mechanism of the complainant, as described in his letters patent, and the machine made and used or sold by the respondent, if it be a machine as in this case. Blanchard v. Putman, 8 Wall. [75 U. S.] 426. Tested solely by the short description of the complainant's invention, as given in his letters patent and in the introductory part of the specification, it would seem that he intended to claim the product rather than the means by which the product or manufacture is produced; but the whole instrument must be taken together, and when so considered, it is quite clear that such a construction ought not to be adopted, as the patentee states, in the same paragraph of the specification, that his invention is specially useful for the formation or production of types used in hand stamps for postmarking letters or for canceling revenue or postage stamps. In the descriptive portion of the specification, he divides his invention into two parts, and states that the first part consists in raising the printing surfaces from a thin sheet or piece of metal by means of one or more dies, or a punch and die, suitably formed for the purpose; that the second part consists in making a printing face on the part or parts so raised by planing, filing, or reducing the same so as to remove the round edges and produce an even, flat, and defined surface, suitable for printing the letters or figures, as the case may be. Letters or figures can not, it seems, be easily struck up from a thin plate of metal by a punch or die, so as to make a good printing face, because the edge of the types or figures will be rounded, arising from the fact that the metal, when forced into the female die by the punch, will not completely fill the die, rendering the product unfit to be used for printing, which creates the necessity for reducing the depth of the article sufficiently to remove that defect, and thereby to create a smooth surface, which may be accomplished by planing or grinding the type to the extent required. Description is then given of the mode in which the patentee grinds down or reduces a type chain, or printing plate, band, or strip, which it is represented, may be done by placing the chain in a groove formed in a metallic plate provided with suitable guides on which the filing or planing instrument may travel, and be used in reducing the types to one plane, and leave the faces of the same with suitably defined edges. Based upon those explanations, the patentee claims as his invention the said manufacture or printing type, made substantially as described, by the combined processes of stamping the letter or figure from a plate or piece of metal, and sub-

sequently reducing the same in the manner and for the purpose set forth. Corresponding examination should be made of the devices made and sold by the respondents in order to compare the two, and to be able to determine understandingly the issue of infringement. Difficulties attended that inquiry at the first hearing, as the proofs in the case, as exhibited at that time, were ambiguous and unsatisfactory on that point. Since that time additional proofs have been taken by leave of court, and the parties have been allowed to file additional printed arguments.

When the respondents first commenced to make such devices, they were struck upon ring blanks, in order to allow the ring to revolve around the centre of the wheel, as the ring only formed a portion of the wheel, while the other portion was formed by a round piece of metal which filled the ring. They were, as represented, struck in ring wheels, in order to index them on the sides, the index upon the ring corresponding with the figures on the ring, and that on the centre of the wheel corresponding to the next wheel to which it was attached. Type-wheels made in that way were used in the index-hand stamp. Exhibits were given in evidence at the same time, but the description of the mode in which the type-wheels were made now seems to be plain and unambiguous. They now use a mold or die, in which they place a round flat piece of metal, as in exhibit marked "forty," and then force is applied to it, striking upon the upper side of a flat piece of metal or blank, which drives the metal laterally into the mold or die. Such is the general description of the process, as given by several witnesses, but another witness enters more into particulars. He says he cuts out the blanks to the size of the die or mold, so that the blank will just slip into the same, crowning it a very little, because the metal when hot is expanded.

Prepared in that way and made sufficiently crowning so that the piece will fill the circular mold, when the metal is cold, the blanks are then heated "red hot" and put into the die or mold, and the blow is then brought on to it with force enough to make the metal flow laterally into the die. Doubts are expressed by the expert called by the complainant, whether the device can be made in that way, but the proofs introduced by the respondents are entitled to greater weight than the opinion of any expert, as the question is one which can be demonstrated by practical operation and experiment. Made and constructed in that way, the respondents allege in their answer, that the letters or figures upon the type-blocks are not reduced in any manner "so as to remove round edges, or to produce a flat surface suitable for printing;" that the letters or figures when the blocks are taken from the dies are already, and by reason of the process of manufacture, "of a defined flat surface suitable for printing," because when the metal is forced into the female die by the plunger, under the pressure, is completely fills the matrix, forming the letters and figures of proper type-faces without requiring any portion of the face of the letters to be reduced to adapt them for printing, as shown by the exhibits filed in the case. Some conflict undoubtedly exists in the proofs upon this subject, but the court is of the opinion that in making printing type, by the respondent's process, the result which they attain is generally accomplished without planing, filing, or reducing the depth of the type. Exceptional instances may, and doubtless do arise, but the evidence satisfies the court that the means of accomplishing such a reduction, for the purpose described in the complainant's patent, is no part of the process of the respondents, and if any necessity ever arises to make any such reduction in the depth of the product, it is, save in very exceptional cases, to overcome the effect of eccentricity in the wheels or of the variations in drilling the wheel-holder to render them coincident with the electrotype plate of the stamp. Such a reduction in depth, for any purpose, it is believed, would be unnecessary if perfect uniformity could be secured in drilling the axle holes of the wheels concentric, and in drilling the axle holes of the wheel-holder the same distance from the bottom; but perfect accuracy in that respect is difficult, and when the variation is considerable, it must be overcome, and the evidence shows that such defects are sometimes cured by filing. Metallic elements of a machine or device often require some "fitting" before the same are put together, and the court is not satisfied that any thing more is done by the respondents, or required to be done in that behalf, in the use of their process, than what properly falls within that rule. Such inequalities and imperfections in the elements of machinery are usually overcome or remedied in that way, and in the judgment of the court no such act can be regarded as an infringement of the complainant's patent. Bill of complaint dismissed with costs.

[For another case involving the same patents see Draper v. Hudson, Case No. 4,069.]

HUDSON (DRAPER v.). See Case No. 4,069.

HUDSON (HALL v.). See Case No. 5,935.

HUDSON (SADDLER v.). See Case No. 12,206.